IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AHARON L. ATOMANCZYK, TDCJ #736187, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-17-0719 |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE, et al., | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

State inmate Aharon L. Atomanczyk has filed a First Amended Complaint for Injunctive and Declaratory Relief, Damages, and Attorneys' Fees ("Amended Complaint") (Docket Entry No. 21), against the Texas Department of Criminal Justice ("TDCJ"), Executive Director Bryan Collier, and Senior Warden Wayne Brewer of the Stiles Unit in Beaumont. Now pending is Defendants Texas Department of Criminal Justice, Bryan Collier, and Wayne Brewer's Motion for Summary Judgment Limited to Exhaustion of Administrative Remedies ("Defendants' MSJ") (Docket Entry No. 38). Atomanczyk has filed Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment Limited to Exhaustion of Administrative Remedies ("Plaintiff's Response") (Docket Entry No. 43), to which the defendants have filed Defendants Texas Department of Criminal Justice, Bryan Collier, and Wayne Brewer's Reply in support of

their Motion for Summary Judgment Limited to Exhaustion of Administrative Remedies ("Defendants' Reply") (Docket Entry No. 44). After considering all of the pleadings, the exhibits, and the applicable law, the court will deny Defendants' MSJ for the reasons explained below.

I. **Background and Procedural History**

This case concerns Atomanczyk's accommodations and access to religious services while incarcerated in TDCJ. Atomanczyk describes himself as an "Ultra-Orthodox Jewish" inmate,[1] who is "permanently disabled" as the result of multiple sclerosis.[2] From 2013 to 2015 Atomanczyk was assigned to the Stringfellow Unit in Rosharon, where he participated in TDCJ's "Enhanced Jewish Services Program."[3] The Enhanced Jewish Services Program, which is only available at the Stringfellow Unit, reportedly features a "kosher meals program, Jewish studies program, chaplaincy program, and prayer services program."[4] Thus, as a participant in this program, Atomanczyk had access to meals prepared in "a kosher kitchen providing a nutritionally sufficient kosher diet, weekly communal

---

[1]Amended Complaint, Docket Entry No. 21, p. 4 ¶ 13. For purposes of identification, all page numbers refer to the pagination assigned to each docket entry by the court's electronic filing system, CM/ECF.

[2]Id. at 5 ¶ 17.

[3]Id. ¶ 16.

[4]Id.

Shabbat prayer services at the direction of an ordained Orthodox rabbi, daily communal prayer services, weekly rabbinic visits, and on-site chaplaincy services."[5]

To accommodate Atomanczyk's disability, which is "degenerative and will worsen over time," prison classification officials have limited his housing options to "single-level medical units" operated by TDCJ.[6] As a result, Atomanczyk was transferred from the Stringfellow Unit to the Jester III Unit in December of 2015.[7] The Jester III Unit, however, only offers a "Basic Jewish Services Program," which does not offer inmates the same opportunity to exercise their religious beliefs as the Enhanced Jewish Services Program that is available only at the Stringfellow Unit.[8] Most notably, the Jester III Unit lacks a kosher kitchen.[9]

On September 10, 2016, Atomanczyk filed a Step 1 Grievance to challenge the conditions of his confinement at the Jester III Unit.[10] Atomanczyk complained that he was being denied a kosher

---

[5] Id. at 3-4 ¶ 11.

[6] Id. at 5 ¶ 17. Atomanczyk explains that his symptoms include dizzy spells, difficulty with balance, lethargy, recurring seizures, and vision problems, which restrict him from assignment to second or third-floor housing, as well as bunk beds, because of an inability to climb. Id. ¶¶ 17, 18.

[7] Id. ¶ 19.

[8] Id. at 3 ¶ 10, 6-7 ¶ 24.

[9] Id. at 3 ¶ 11.

[10] Step 1 Grievance #2017007211, Exhibit A to Defendants' MSJ, Docket Entry No. 38-1, pp. 5-6.

diet as dictated by the tenets of his Jewish faith.[11] Atomanczyk noted that he had previously followed a kosher diet and worked in the kosher kitchen at the Stringfellow Unit, but that he had been removed from that facility because of medical restrictions that were imposed as the result of his disability.[12] Atomanczyk complained further that he was unable to practice "other basic Commands of obligations to all Jewish men," such as the ability to possess and wear a tefillin or a kippah (which are items traditionally worn by Orthodox Jewish men), and to gather daily for study and prayer as a community.[13]

On October 11, 2016, a prison official at the Jester III Unit responded to the Step 1 Grievance and advised Atomanczyk that the Chaplaincy Department would fill out an "HQ-150" to address his concerns.[14] Atomanczyk explains that an HQ-150 is a form used to present a complaint to the "TDCJ Religious Practices Committee" in Huntsville.[15] According to Atomanczyk, TDCJ Chaplain Thomas Lowe helped him fill out and submit an HQ-150 request to the TDCJ Religious Practices Committee detailing Atomanczyk's past involvement in the Enhanced Jewish Services Program, his exclusion from

---

[11]Id. at 5.

[12]Id.

[13]Id. at 6.

[14]Id.

[15]Verified Original Complaint [for] Declaratory Judgment and Injunctive Relief Only ("Original Complaint"), Docket Entry No. 1, p. 7 ¶ 45.

the program due to his medical restrictions, and the need for TDCJ to change its policies to accommodate his religious beliefs.[16] Pending resolution of this HQ-150 request, the official who answered Atomanczyk's Step 1 grievance advised him that he would have to choose from the three menu plans offered by TDCJ (a "regular tray, meat free tray and pork free tray") in the meantime.[17] The official did not address any of Atomanczyk's other requests, commenting only that "[n]o further action [was] warranted."[18]

---

[16]Declaration of Plaintiff Aharon L. Atomanczyk in Support of Response in Opposition to Defendants' Motion for Summary Judgment Limited to Exhaustion of Administrative Remedies ("Atomanczyk Declaration"), Exhibit 2 to Plaintiff's Response, Docket Entry No. 43-9, p. 4 ¶ 18. According to TDCJ Administrative Directive AD-07.30, the HQ-150 is a "Religious Practice Issue Assessment form" used to evaluate requests by inmates for "religious programs, services, or accommodations." TDCJ Administrative Directive AD 07.30, Exhibit 1D to Plaintiff's Response, Docket Entry No. 43-6, p. 4. It appears that the HQ-150 process affords an additional layer of administrative review apart from the grievance process. See, e.g., Williams v. Bedison, Civil No. 2:16-0020, 2017 WL 1102884, at *2 (N.D. Tex. March 3, 2017) ("According to regulation, offenders submit an I-60 request, the chaplain of the unit reviews that request and interviews the offender, and for religious practices that have not been previously addressed, the chaplain should complete an HQ-150 form and submit that form to Chaplaincy Headquarters."); Gooden v. Crain, Civil No. 6:04-127, 2008 WL 3271557, at *3 (E.D. Tex. Aug. 6, 2008) ("If an inmate submits a request for an accommodation, then an investigation (HQ-150) is conducted involving the inmate seeking an accommodation, the wardens where the inmate is located and the Religious Practices Committee.") (summarizing trial testimony by Billy Pierce, the Director of Chaplaincy for TDCJ). Neither party has presented any documentation related to the process that was undertaken in response to Atomanczyk's HQ-150 request.

[17]Step 1 Grievance #2017007211, Exhibit A to Defendants' MSJ, Docket Entry No. 38-1, p. 6.

[18]Id.

-5-

On October 15, 2016, Atomanczyk filed a Step 2 Grievance appeal, arguing that TDCJ was placing an "undue burden" on the right to freely practice his religion because he was excluded from a "program" as the result of his disability.[19] Noting that the program described in his Step 1 Grievance was not available at an accessible location, Atomanczyk added that he and other inmates with disabilities were "segregated in units without equivalent programs" in violation of the Americans with Disabilities Act.[20]

On November 17, 2016, a regional director rejected the Step 2 Grievance and responded that the HQ-150 process was "still pending from the Huntsville Committee" regarding Atomanczyk's initial Step 1 Grievance.[21] The regional director added that prison officials needed "additional time for this process to be approved" and concluded that "[n]o further action [was] warranted in this matter."[22] According to Atomanczyk, the TDCJ Religious Practices Committee failed to resolve any of his complaints during the HQ-150 process and has never issued any formal response.[23]

---

[19] Step 2 Grievance #2017007211, Exhibit A to Defendants' MSJ, Docket Entry No. 38-1, pp. 3-4.

[20] Id. at 3.

[21] Id. at 4.

[22] Id.

[23] Original Complaint, Docket Entry No. 1, p. 7 ¶ 46; Atomanczyk Declaration, Exhibit 2 to Plaintiff's Response, Docket Entry No. 43-9, p. 4.

On March 1, 2017, Atomanczyk filed a pro se Original Complaint in this case.[24] Atomanczyk alleged that TDCJ violated the Religious Land Use and Institutionalized Persons Act (the "RLUIPA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"), when it assigned him to the Jester III Unit, which accommodated his disability, but effectively excluded him from the Enhanced Jewish Services Program and the availability of kosher meals offered at the Stringfellow Unit.[25] Atomanczyk requested access to kosher food and the Enhanced Jewish Services Program in all TDCJ facilities.[26]

In May of 2017 Atomanczyk was transferred to the Stiles Unit in Beaumont, which houses disabled prisoners, but which also offers only a Basic Jewish Services Program without a kosher kitchen.[27] At around the same time, Atomanczyk retained the assistance of counsel, who filed an Amended Complaint on his behalf on June 23, 2017.[28]

The Amended Complaint filed by Atomanczyk added TDCJ Executive Director Bryan Collier and Stiles Unit Senior Warden Wayne Brewer in their official capacities.[29] The Amended Complaint asserts that

---

[24]Original Complaint, Docket Entry No. 1, p. 1.

[25]Id. at 4-10.

[26]Id. at 10-11.

[27]Amended Complaint, Docket Entry No. 21, p. 3 ¶ 10, p. 5 ¶ 19.

[28]Id. at 13.

[29]Id. at 3 ¶¶ 7, 8.

the defendants have violated the RLUIPA, the ADA, and the RA, by excluding Atomanczyk from the Enhanced Jewish Services Program on account of his disability.[30] Atomanczyk contends in particular that, by transferring him to the Stiles Unit, which like the Jester III Unit offers only a Basic Jewish Services Program,[31] he has been denied access to "kosher meals (let alone a nutritionally sufficient kosher diet), weekly communal Shabbat prayer services at the direction of an ordained Orthodox rabbi, daily communal prayer services, weekly rabbinic visits, and on-site chaplaincy services — all of which non-disabled Jewish prisoners receive at the Stringfellow Unit" through the Enhanced Jewish Services Program.[32]

Arguing that Atomanczyk made no specific mention of access to a kosher diet, weekly communal Shabbat prayer services, weekly rabbinic visits, or on-site chaplaincy services in both his Step 1 and Step 2 Grievances, the defendants contend that Atomanczyk's Amended Complaint must be dismissed because he did not exhaust administrative remedies with respect to all of the claims that he raises in his Amended Complaint.[33] Therefore, the defendants move for summary judgment on the grounds that Atomanczyk failed to comply with the exhaustion requirement found in the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

---

[30]Id. at 9-12.

[31]Id. at 3 ¶ 10.

[32]Id. at 5-6 ¶ 19.

[33]Defendants' MSJ, Docket Entry No. 38, pp. 4-5.

## II. Standard of Review

The Defendants' MSJ is governed by Rule 56 of the Federal Rules of Civil Procedure. Under this rule a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. Id.

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010) (internal quotation marks and citation omitted). The non-movant cannot avoid summary judgment simply by presenting "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." Jones v. Lowndes County, Mississippi, 678 F.3d 344, 348 (5th Cir. 2012) (quoting TIG Ins. Co. v. Sedgwick James of Washington, 276 F.3d 754, 759 (5th Cir. 2002)); see also Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a

scintilla of evidence). If the movant demonstrates an "absence of evidentiary support in the record for the nonmovant's case," the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial." Sanchez v. Young County, Texas, 866 F.3d 274, 279 (5th Cir. 2017) (citing Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 812 (5th Cir. 2010)); see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

### III. Exhaustion of Administrative Remedies

The PLRA, which governs this case, requires prisoners to exhaust available administrative remedies before filing suit in federal court. See 42 U.S.C. § 1997e(a). The Supreme Court has emphasized that § 1997e(a) mandates exhaustion of all administrative procedures before an inmate can file a suit challenging prison conditions. See Booth v. Churner, 121 S. Ct. 1819, 1825 (2001); Porter v. Nussle, 122 S. Ct. 983, 988 (2002); Woodford v. Ngo, 126 S. Ct. 2378, 2382-83 (2006); see also Jones v. Bock, 127 S. Ct. 910, 918-19 (2007) (confirming that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). Because pre-filing exhaustion is mandatory, a case must be dismissed if available administrative remedies were not exhausted. See Gonzalez v. Seal, 702 F.3d 785, 788 (5th Cir. 2012) (noting further that "[d]istrict courts have no discretion to excuse a prisoner's

failure to properly exhaust the prison grievance process before filing their complaint").

TDCJ has a formal two-step administrative grievance process. See Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004); see also Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) (outlining the two-step procedure, which at Step 1 entails submitting an administrative grievance at the institutional level followed by a Step 2 appeal if the result is unfavorable). A Step 1 Grievance, which is reviewed by officials at the inmate's assigned facility, must be filed within fifteen days of the alleged incident or challenged event. See Johnson, 385 F.3d at 515. Once an inmate receives a response to his Step 1 grievance, he then has ten days to file a Step 2 grievance to appeal an unfavorable result at the state level. See id. Substantial compliance with this process is not enough to exhaust remedies under the PLRA. Dillon, 596 F.3d at 268 ("Under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion . . ."). A Texas prisoner must pursue a grievance through both steps to satisfy the exhaustion requirement. See Johnson, 385 F.3d at 515 (citation omitted).

The defendants argue that Atomanczyk failed to exhaust administrative remedies because the Step 2 Grievance that he filed on October 15, 2016 (his appeal from Step 1 Grievance #2017007211), complained only of being excluded from an unspecified "program" or "programs," and made no mention of his exclusion from kosher meals

or any other specific features of the Enhanced Jewish Services Program.[34] Thus, the defendants argue that Atomanczyk's allegations were factually insufficient to place them on notice that he was complaining about his exclusion from the Enhanced Jewish Services Program or the lack of access to its attendant features.[35]

In addressing how much detail is required in order to provide notice of a prisoner's problem, the Fifth Circuit has held that the exhaustion requirement must be interpreted "in light of its purposes, which include the goal of giving officials 'time and opportunity to address complaints internally.'" Johnson, 385 F.3d at 516 (quoting Porter, 122 S. Ct. at 988); see also Springer v. Unknown Rekoff, Civil No. 3:14-300, 2016 WL 5372526, at *5 (S.D. Tex. Sept. 26, 2016) (quoting Johnson, 385 F.3d at 516). "Thus, a grievance should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." Johnson, 385 F.3d at 517. Whether the inmate has provided sufficient information depends upon "the type of problem about which the inmate is complaining." Id.

In response to the Defendants' MSJ, Atomanczyk provides documentation in the form of internal Grievance Investigation Worksheets that were completed in response to Atomanczyk's Step 1

---

[34]Defendants' MSJ, Docket Entry No. 38, pp. 4-6.

[35]Id.; Defendants' Reply, Docket Entry No. 44, pp. 4-5.

and Step 2 Grievances.[36] It is apparent from this documentation that prison officials understood that Atomanczyk was complaining about his exclusion from the Enhanced Jewish Services Program at the Stringfellow Unit, which is the only TDCJ facility with a kosher kitchen. This understanding is evidenced by the fact that Atomanczyk's claims were referred to the Chaplaincy Department for the purpose of additional consideration by the TDCJ Religious Practices Committee through the HQ-150 process.[37] Given the context of the claims outlined in Atomanczyk's Step 1 and Step 2 Grievances, his allegations are not so vague or unintelligible that TDCJ officials could not have known that he was complaining about his exclusion from the Enhanced Jewish Services Program.[38] See,

---

[36]Grievance Investigation Worksheets, Step 1 and Step 2 Grievance #2017007211, Exhibit 1C to Plaintiff's Response, Docket Entry No. 43-5, pp. 2-5.

[37]Step 1 Grievance #2017007211, Exhibit A to Defendants' MSJ, Docket Entry No. 38-1, p. 6.

[38]The Supreme Court has clarified that inmates are only required to provide the "level of detail necessary in a grievance to comply with the [prison's] grievance procedures," depending on the prison system's requirements. Jones, 127 S. Ct. at 923. TDCJ procedures prescribing the content of a grievance do not require a specific level of factual particularity or detail. See Offender Orientation Handbook (Rev. Feb. 2017), Exhibit 1E to Plaintiff's Response, Docket Entry No. 43-7, pp. 86-88 (containing the "Grievance Procedures for Offenders"). If prison regulations do not prescribe any particular content for inmate grievances, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002).

e.g., Moussazadeh v. Texas Dep't of Criminal Justice, 703 F.3d 781 (5th Cir. 2012) (involving a claim similar to the one raised here about a Jewish inmate who was transferred from the Stringfellow Unit to the Stiles Unit, where kosher food was unavailable). Based on this record, the court concludes that Atomanczyk provided officials with fair notice of the claims that he has raised in the Amended Complaint. Because defendants have not shown Atomanczyk failed to exhaust administrative remedies with respect to his claims, the Defendants' MSJ will be denied.

## IV. Claims Against Warden Brewer

After briefing was completed on the Defendants' MSJ, the court was advised that Atomanczyk has been transferred from the Stiles Unit in Beaumont, where he was in custody when the Amended Complaint was filed.[39] Atomanczyk is now housed at the Hughes Unit in Gatesville.[40] Because Atomanczyk is no longer in custody at the Stiles Unit, counsel for the plaintiff is directed to advise the court in writing within fourteen days whether Defendant Wayne Brewer, who is sued only in his official capacity as Warden of the Stiles Unit, remains an appropriate defendant in this case and, if so, why.

---

[39]Advisory to the Court re: Plaintiff's Address ("Advisory"), Docket Entry No. 45, p. 1.

[40]Id.

### V. Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1. Defendants Texas Department of Criminal Justice, Bryan Collier, and Wayne Brewer's Motion for Summary Judgment Limited to Exhaustion of Administrative Remedies (Docket Entry No. 38) is **DENIED**.

2. Plaintiff's counsel shall advise the court in writing within fourteen days of the date of this Order whether Defendant Wayne Brewer remains an appropriate defendant in this case.

**The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties.**

**SIGNED** at Houston, Texas, on this 6th day of November, 2017.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE