IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

AHARON L. ATOMANCZYK, §
TDCJ #736187, §
 §
 Plaintiff, §
 §
v. § CIVIL ACTION NO. H-17-0719
 §
TEXAS DEPARTMENT OF §
CRIMINAL JUSTICE, et al., §
 §
 Defendants. §

## MEMORANDUM OPINION AND ORDER

Plaintiff Aharon L. Atomanczyk has filed a First Amended Complaint for Injunctive and Declaratory Relief, Damages, and Attorneys' Fees ("Amended Complaint") (Docket Entry No. 21), challenging the conditions of his confinement in the Texas Department of Criminal Justice ("TDCJ"). Defendants TDCJ and Executive Director Bryan Collier have filed a Motion for Protective Order from discovery ("Defendants' Motion") (Docket Entry No. 49). Plaintiff has filed a Response in Opposition ("Plaintiff's Response") (Docket Entry No. 50) and Defendants have filed a Reply ("Defendants' Reply") (Docket Entry No. 51). After considering all of the submissions and the applicable law, the court will grant Defendants' Motion, in part, for the reasons explained below.

## I. **Background**

The background and procedural history have been set forth previously and will not be repeated at length.¹ It is sufficient to note that this case concerns Atomanczyk's accommodations and access to religious services as an "Ultra-Orthodox Jewish" inmate,² who is "permanently disabled" as the result of multiple sclerosis.³ Because his disability requires the availability of 24-hour medical care, Atomanczyk was transferred from the Stringfellow Unit, where he had participated in TDCJ's "Enhanced Jewish Services Program."⁴ As a participant in that program, Atomanczyk had access to meals prepared in a kosher kitchen as well as other services that were a available at the direction of an ordained Orthodox rabbi.⁵

Atomanczyk filed this lawsuit after he was transferred from the Stringfellow Unit to another prison facility that did not have a kosher kitchen or afford opportunities similar to those offered by the Enhanced Jewish Services Program.⁶ Atomanczyk alleged that

---

¹See Memorandum Opinion and Order dated November 6, 2017, Docket Entry No. 46, pp. 2-8. For purposes of identification, all page numbers refer to the pagination assigned to each docket entry by the court's electronic filing system, CM/ECF.

²Amended Complaint, Docket Entry No. 21, p. 4.

³Id. at 5.

⁴Id.

⁵Id. at 3-4.

⁶Original Complaint, Docket Entry No. 1, p. 1.

TDCJ violated the Religious Land Use and Institutionalized Persons Act (the "RLUIPA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"), when it assigned him to a unit that accommodated his disability, but effectively excluded him from the Enhanced Jewish Services Program and, in particular, the availability of kosher meals of the sort offered at the Stringfellow Unit.[7] Atomanczyk requested access to kosher food and the Enhanced Jewish Services Program in all TDCJ facilities.[8] Atomanczyk subsequently obtained the assistance of pro bono counsel, who filed an Amended Complaint on his behalf, and added Executive Director Collier as a defendant in his official capacity.[9]

Defendants now seek a protective order from responding to Plaintiff's Requests for Production Nos. 5 and 6.[10] The disputed requests seek documents from a previous lawsuit against TDCJ where lack of access to kosher meals was an issue:

> **Request No. 5:** All documents and communications concerning any proposals for providing kosher meals to inmates and all documents and communications relating to such proposals arising as a result of the Moussazadeh Action.
>
> **Request No. 6:** All documents and communications

---

[7]Id. at 4-10.

[8]Id. at 10-11.

[9]Id. at 13.

[10]Defendants' Motion, Docket Entry No. 49, p. 2.

concerning any settlement or potential settlement of the
Moussazadeh Action.[11]

Defendants seek protection from responding to these requests because they seek "a significant amount of privileged information" as well as "communications regarding a different lawsuit with substantially different facts and different relief sought."[12]

Defendants also request a protective order that would extend the deadline for responding to Plaintiff's Interrogatory Requests Nos. 2 through 8 until 45 days from the close of discovery,[13] which is currently scheduled to occur on June 29, 2018,[14] or some other date deemed acceptable by the court.[15] The disputed interrogatories are as follows:

> **Request No. 2:** Identify all facts that support your contention that Plaintiff is not a qualified individual with a disability entitled to participate in the Enhanced Jewish Services Program.
>
> **Request No. 3:** Identify all facts that support your contention that denying Plaintiff access to the Basic Jewish Services Program at his current Hughes Unit location does not substantially burden his free exercise of religion.
>
> **Request No. 4:** Identify all facts that support your contention that denying Plaintiff access to the Enhanced Jewish Services Program does not substantially burden his free exercise of religion.

---

[11]Id.

[12]Id. at 4.

[13]Defendants' Motion, Docket Entry No. 49, p. 2.

[14]Docket Control Order, Docket Entry No. 42, p. 2.

[15]Defendants' Motion, Docket Entry No. 49, pp. 2, 4.

**Request No. 5:** Identify all facts that support your contention that you are taking the least restrictive means in imposing a burden on Plaintiff's free exercise of religion.

**Request No. 6:** Identify all facts that support your contention that relocating the Enhanced Jewish Services Program is not reasonable.

**Request No. 7:** Identify all facts that support your contention that housing all inmates who request access to the Enhanced Jewish Services Program at either Ramsey I, Ramsey II, or Ramsey III and providing qualified inmates, including inmates with a medical disability, with the benefits of the Enhanced Jewish Services Program, is not reasonable.

**Request No. 8:** Identify all facts that support your contention that you are not required to provide Plaintiff with access to the Enhanced Jewish Program, including, but not limited to, nutritionally sufficient kosher meals.[16]

Arguing that they do not yet know "all facts" that support their "legal contentions" in this case, Defendants seek a delay in responding to these interrogatories "until this evidence is further developed."[17]

## II. Standard of Review

Unless limited by a court order, the scope of permissible discovery in a civil action is outlined in Rule 26(b) of the Federal Rules of Civil Procedure, is as follows:

> . . . Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the

---

[16]Defendants' Motion, Docket Entry No. 49, p. 3.

[17]Id. at 3-4.

case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). "A discovery request is relevant when the request seeks admissible evidence or is reasonably calculated to lead to the discovery of admissible evidence." Crosby v. Louisiana Health Serv. Indem. Co., 647 F.3d 258, 262 (5th Cir. 2011) (citation and internal quotation marks omitted). District courts have broad discretion when deciding whether to limit discovery that is not relevant or proportional to the needs of a case. See id. at 261. In that respect, "Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." Crosby, 647 F.3d at 264 (citation and internal quotation marks omitted).

Rule 26(c)(1) of the Federal Rules of Civil Procedure, which governs Defendants' Motion, authorizes a district court to issue, "for good cause shown," an order to protect "a party or person from annoyance, embarrassment, oppression, or undue burden or expense" where discovery is concerned. See Landry v. Air Line Pilots Ass'n, 901 F.2d 404, 435 (5th Cir. 1990). Under Rule 26(c)(1), a protective order may impose one or more of the following conditions that limit discovery by - -

(A) forbidding the disclosure or discovery;

> (B) specifying the terms, including time and place
>     or the allocation of expenses, for the
>     disclosure or discovery;
>
> (C) prescribing a discovery method other than the
>     one selected by the party seeking discovery;
>     [and/or]
>
> (D) forbidding inquiry into certain matters, or
>     limiting the scope of disclosure or discovery
>     to certain matters . . .

FED. R. CIV. P. 26(c)(1)(A)-(D). The burden is on the party resisting discovery to show cause that a protective order is necessary by making "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." In re Terra Int'l, 134 F.3d 302, 306 (5th Cir. 1998). To meet that burden, the party resisting discovery must "show specifically how . . . each [request] is not relevant or how each question is overly broad, burdensome, or oppressive." McLeod, Alexander, Powell & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1485 (5th Cir. 1990) (citations and internal quotation marks omitted).

### III. Discussion

#### A. Plaintiff's Requests for Production

Request No. 5 seeks all "documents and communications concerning any proposals for providing inmates with kosher meals" in connection with litigation filed by another Jewish inmate (Max Moussazadeh), who requested kosher meals for religious reasons while he was incarcerated in TDCJ, and Request No. 6 seeks documents and communications regarding "any settlement or potential

settlement of" that case.[18] The Moussazadeh case was filed in the Eastern District of Texas in 2005 and later transferred to the Southern District of Texas, where it was dismissed in March 2017, following the plaintiff's release from prison. See Moussazadeh v. TDCJ, Civil No. 9:05-197 (E.D. Tex.) and Moussazadeh v. TDCJ, Civil No. 3:07-574 (S.D. Tex.). Similar to the Plaintiff in this case, the plaintiff in Moussazadeh invoked the RLUIPA and sought injunctive relief in the form of access to "a nutritionally sufficient kosher diet."[19]

Plaintiff notes that during settlement negotiations in the Moussazadeh case TDCJ "undertook a study of the logistics and cost of providing kosher food to observant Jewish inmates" by examining kosher food programs in other prison systems.[20] Documents associated with the settlement process and the cost study are relevant here, according to Plaintiff, because the Moussazadeh litigation "led to the establishment of the kosher kitchen" at the Stringfellow Unit and "resulted in the creation of the Enhanced Jewish Services Program" that Plaintiff formerly participated while at that facility.[21]

---

[18]Defendants' Motion, Docket No. 49, p. 2.

[19]Exhibit A, Complaint in Civil Action No. 9:05-157 (E.D. Tex.), Docket Entry No. 49-1, p. 8.

[20]Plaintiff's Response, Docket Entry No. 50, pp. 4-5 (quoting Moussazadeh v. TDCJ, 703 F.3d 781, 786 (5th Cir. 2012)).

[21]Plaintiff's Response, Docket Entry No. 50, pp. 5, 7-8.

Defendants have asserted the attorney-client privilege and the work-product doctrine, arguing that there are a substantial number of confidential internal documents that are protected from discovery.[22] Defendants also argue that the documents requested are not relevant or that, to the extent they are, requiring production would be unduly burdensome in light of the minimal value of the information requested, much of which is available in the public record.[23]

1. Attorney-Client Privilege and Work-Product Doctrine

Defendants note that the <u>Moussazadeh</u> case, which was pending for over twelve years, was stayed for some time while the parties attempted to negotiate a settlement.[24] The Office of Attorney General's litigation file in the <u>Moussazadeh</u> case consists of 17 boxes of documents, making the preparation of a privilege log cumbersome.[25] Defendants estimate that there are "thousands of communications between attorneys for TDCJ and high-level TDCJ officials" in TDCJ's internal files and in the litigation files maintained by the Office of Attorney General.[26] Noting that no

---

[22]Defendants' Motion, Docket Entry No. 49, pp. 4, 6.

[23]Defendants' Motion, Docket Entry No. 49, pp. 7-9.

[24]Defendants' Motion, Docket Entry No. 49, p. 7.

[25]Declaration of Amber McKeon-Mueller, Docket Entry No. 49-2, pp. 1-2.

[26]Defendants' Motion, Docket Entry No. 49, p. 7.

settlement was ever reached in the Moussazadeh case,[27] Defendants argue that a significant number of documents and communications referenced in Request No. 6 are protected by the attorney-client privilege and the work-product doctrine to the extent that they relate to TDCJ's internal settlement considerations.[28]

"The attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice. The privilege also protects communications from the lawyer to the client, at least if they would tend to disclose the client's confidential communications." Apex Mun. Fund v. N-Group Sec., 841 F. Supp. 1423, 1425-26 (S.D. Tex. 1993) (citing Hodges, Grant & Kaufmann v. United States Government, 768 F.2d 719, 720-21 (5th Cir. 1985)) (internal quotation marks omitted). The party asserting the privilege bears the burden of proof that it applies. See EEOC v. BDO USA, LLP., 876 F.3d 690, 695 (5th Cir. 2017).

Similarly, the work-product doctrine protects "the fruits of an attorney's trial preparations from the discovery attempts of an opponent." Shields v. Sturm, Ruger & Co., 864 F2d 379, 382 (5th Cir. 1989) (citation omitted). Work product that is exempt from discovery includes: "interviews, statements, memoranda,

---

[27]Moussazadeh's case was ultimately dismissed without prejudice pursuant to a joint stipulation after he was released from prison. See Exhibit, Order of Dismissal in Civil No. 3:07-574 (S.D. Tex. March 31, 2017), Docket Entry No. 49-1, p. 82.

[28]Defendants' Motion, Docket Entry No. 49, p. 6.

correspondence, briefs, mental impressions, personal beliefs, and other work done by an attorney on behalf of the client's litigation. Hickman v. Taylor, 67 S. Ct. 385, 393 (1947). The work product privilege is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, which provides that work product is discoverable only if the party seeking discovery shows that (1) it is "otherwise discoverable under Rule 26(b)(1);" and (2) "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).

Although not admissible at trial to prove liability pursuant to Rule 408 of the Rules of Evidence, "final settlement agreements are discoverable to the extent that they are relevant." Simms v. National Football League, Civil No. 3:11-0248, 2013 WL 11570273, at *4 (N.D. Tex. Feb. 27, 2013) (citing In re Enron Corp. Sec., Derivative & ERISA Litig., 623 F. Supp. 2d 798, 838 (S.D. Tex. 2009) (collecting cases)). Courts have held, however, that documentation such as "internal memoranda, communications, and analyses performed in furtherance of [a settlement] are privileged" and are not discoverable. Perez v. Perry, Civil No. 11-360, 2014 WL 2533801, at *6 (W.D. Tex. June 5, 2014) (citations omitted); see also Simms, 2013 WL 11570273, at *4 (Documentation consisting of "the computation, discussion and other communication leading up to settlement is protected under the work product doctrine and

attorney-client privilege.")(citing <u>Kiln Underwriting LTD v. Jesuit High Sch. of New Orleans</u>, Civil No. 06-04350, 2008 WL 41990991, at *8 (E.D. La. Aug. 27, 2008) ("While the Court concludes that [the plaintiff] may discover the agreement itself, the Court also concludes that [the [plaintiff] cannot discover those communications . . . leading up to the settlement agreement, which may be protected by the work product or attorney-client privilege doctrines.")).

Plaintiff responds that documents and communications that relate to settlement negotiations are not automatically privileged.[29] This is true in certain contexts. Courts have allowed discovery of settlement negotiations in limited circumstances, such as where underlying negotiations are relevant to the calculation of a reasonable royalty in a patent case. See <u>Two-Way Media LLC v. AT&T, Inc.</u>, Civil No. 09-476, 2011 WL 13113724, at *3 (W.D. Tex. Mar. 7, 2011); <u>but see</u> <u>Mondis Tech, Ltd. v. LG Electronics, Inc.</u>, Civil No. 2:07-565, 2011 WL 1714304, at *5 (E.D. Tex. May 4, 2011) (declining to allow discovery of settlement negotiations in that context where the settlement was unconsummated). Courts have also allowed discovery of settlement negotiations "where the party seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive." <u>Hemphill v. San Diego Ass'n of Realtors, Inc.</u>,

---

[29]Plaintiff's Response, Docket Entry No. 50, p. 10.

225 F.R.D. 616, 620 (S.D. Cal. 2005). Neither of those circumstances is present here.

Although Defendants' description of the documents is general, the court agrees that communications or analysis contained in internal memoranda and other documentation prepared by attorneys on behalf of TDCJ during the <u>Moussazadeh</u> case are protected under the attorney-client privilege and work-product doctrines, and that such documents and communications are not subject to discovery. Defendants' Motion for Protective Order from Request Nos. 5 and 6 will be granted with respect to privileged documents.

2.  Relevance

To the extent that the attorney-client and work-product privileges do not apply, Defendants argue that documents and communications from the <u>Moussazadeh</u> case are not sufficiently relevant because Plaintiff, unlike Mr. Moussazadeh, suffers from a medical disability that limits his classification.[30] Specifically, Plaintiff requires housing at a unit that can provide 24-hour medical care.[31] Defendants reason, therefore, that the documents in <u>Moussazadeh</u> are not pertinent because Plaintiff has different classification needs.[32] The court concludes, however, that this is

---

[30]Defendants' Motion, Docket Entry No. 49, p. 8.

[31]<u>Id.</u>

[32]<u>Id.</u>

a distinction without a meaningful difference. The reason for the classification determination does not change the primary relief sought by the inmates in both cases: access to nutritionally sufficient kosher meals. Because Plaintiff, like Mr. Moussazadeh, seeks relief in the form of kosher meals from a kosher kitchen at his unit of assignment, documents and communications from the Moussazadeh case regarding the provision of kosher meals to inmates and the establishment of a kosher kitchen at the Stringfellow Unit are relevant.

Defendants also argue that the documents and communications sought by Request Nos. 5 and 6 are not relevant to the claims at issue because, to the extent that Plaintiff has requested access to nutritionally sufficient kosher meals, he is now receiving pre-packaged kosher meals at his current unit of assignment (the Hughes Unit).[33] Plaintiff disagrees that this makes his request moot, pointing to the supporting documentation provided by Defendants, which shows that Plaintiff has gone on a hunger strike more than once because he questions whether the meals provided are, in fact, kosher, or nutritionally sufficient because he is still denied access to fresh kosher food that is available to other, non-disabled Jewish inmates at the Stringfellow Unit.[34]

---

[33]Defendants' Motion, Docket Entry No. 49, p. 9 (pointing to the Declaration of Dwight Price, Docket Entry No. 49-3, pp. 1-2).

[34]Plaintiff's Response, Docket Entry No. 50, p. 14.

Defendants concede that the Hughes Unit does not have a kosher kitchen.[35] Thus, to the extent that Plaintiff seeks assignment to a facility that has a kosher kitchen or the creation of one at a medical unit where he may be housed, documents about the cost of providing inmates with kosher meals and other considerations that were made when establishing a kosher kitchen in the Moussazadeh case remain relevant.

Defendants note that information about the parties' efforts toward settlement, including documentation regarding the costs and considerations for establishing a kosher kitchen at the Stringfield Unit, are available in the public record of the Moussazadeh proceedings.[36] To the extent that they are not publically available and Plaintiff believes those documents are relevant, Defendants note that this information is at least ten years old, making the cost estimates stale.[37] Nevertheless, the court concludes that Plaintiff is entitled to discover non-privileged documents and communications regarding TDCJ's considerations for providing inmates with kosher meals and for installing a kosher kitchen at

---

[35]Declaration of Dwight Price, Docket Entry No. 49-3, p. 2.

[36]Defendants' Motion, Docket Entry No. 50, p. 7 (listing docket entries from the Moussazadeh case that are included with Defendants' Motion as exhibits).

[37]Defendants' Reply, Docket Entry No. 51, p. 3 (noting that documents regarding the costs and considerations for establishing the kosher kitchen are available in Docket Entry Nos. 122 and 198 in Moussazadeh, Civil Action No. 3:07-574 (S.D. Tex.)).

the Stringfellow Unit during the Moussazadeh case. Defendants' Motion for a Protective Order from discovery of these documents, to the extent that they are not subject to the attorney-client or work-product privileges, will be denied.

**B.    Interrogatories**

Defendants seek a protective order or a deferral extending the time to respond to Interrogatory Nos. 2-8 until 45 days before the close of discovery or, alternatively, some other deadline the court "deems just."[38] Plaintiff opposes the requested extension, noting that the interrogatories at issue request facts that were available to Defendants before litigation began.[39] Defendants correctly note, however, that Plaintiff has asked questions pertaining to facts relating to the claims and defenses in this lawsuit. Both parties are entitled to discovery on those issues, making some delay appropriate. Waiting until 45 days from the close of discovery, however, is unreasonable.

The discovery deadline is currently set for June 29, 2018, and docket call is set for August 10, 2018.[40] The parties did not request a deadline for dispositive motions, which would require additional time for a response and perhaps a reply. The court will

---

[38]Defendants' Motion, Docket Entry No. 49, p. 4.

[39]Plaintiff's Response, Docket Entry No. 50, p. 14.

[40]Docket Control Order, Docket Entry No. 42, p. 2.

not grant an extension of time to complete discovery if doing so would prejudice the parties' ability to brief and file dispositive motions in a timely manner. Given the current scheduling order, Defendants' Motion for Protective Order from responding to Interrogatory Nos. 2-8 will be granted and the time for such responses will be extended up to and including March 1, 2018.

## IV. Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1. Defendants TDCJ and Executive Director Bryan Collier's Motion for Protective Order (Docket Entry No. 49) is **GRANTED, in part, and DENIED, in part.**
2. Defendants are directed to respond within thirty days of the date of this Order to Plaintiff's Requests for Production Nos. 5 and 6 with all non-privileged documents and communications from the Moussazadeh case concerning the costs of providing kosher meals for inmates in TDCJ and the costs associated with establishing a kosher kitchen at the Stringfellow Unit.
3. Defendants are directed to respond to Plaintiff's Interrogatory Request Nos. 2-8 no later than March 1, 2018.

**The Clerk is directed to provide a copy of this Memorandum**

Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 24th day of January, 2018.

SIM LAKE
UNITED STATES DISTRICT JUDGE